1

2

3

4

5

6                    UNITED STATES DISTRICT COURT

7                    EASTERN DISTRICT OF CALIFORNIA

8

9    **MICHELLE A. MAZZETTI,**              |    **CASE NO. 1:13-CV-1123 AWI GSA**

10                    **Plaintiff**

11        **v.**                                **ORDER ON DEFENDANTS' MOTION
                                                 TO DISMISS AND MOTION FOR
12   **CHRIS BELLINO, et al.,**                  SUMMARY JUDGMENT**

13                    **Defendants**           |    (Doc. No. 27)

14

15

16          This is a 42 U.S.C. § 1983 *Bivens* action brought by Plaintiff Michelle Mazzetti

     ("Mazzetti") against three park rangers employed at Yosemite National Park.[1]  The operative
17
     complaint is the First Amended Complaint ("FAC").  Mazzetti alleges violations of the Fourth
18
     Amendment (for unlawful search and seizure and excessive force), the Fifth Amendment (for
19
     violation of equal protection and the *Brady* rule[2]), and the First Amendment (for retaliation).
20
     Defendants have filed a combined motion to dismiss and motion for summary judgment.  For the
21
     reasons that follow, Defendants' motion for summary judgment will be denied, and the motion to
22
     dismiss will be granted in part and denied in part.
23

24

25   [1] Mazzetti's First Amended Complaint named five individual defendants.  However, on April 2, 2014, the parties filed
     a Rule of Civil Procedure 41(a)(1) stipulation for dismissal with prejudice of Defendants Michael Hastings and Aaron
26   Smith.  Therefore, Hastings and Smith are no longer parties to this action.

27   [2] The "*Brady* rule" refers to the rule that the government cannot suppress evidence that is favorable to a criminal
     defendant, but must provide that evidence to the defendant.  See Brady v. Maryland, 373 U.S. 83 (1963); United
28   States v. Blanco, 392 F.3d 382, 381-82 (9th Cir. 2004).

**FACTUAL BACKGROUND[3]**

From the FAC, on July 26, 2011, Mazzetti was in a Yosemite National Park campground with friends.  Yosemite National Park rangers approached Mazzetti's campground to address complaints that someone had been driving a vehicle too quickly through the campground and acting disrespectfully.  The rangers had information that those who had been driving too quickly and acting disrespectfully were all males.  Mazzetti is a female.  When the rangers approached the campsite, there was no indication of criminal behavior or disorderly conduct, and Mazzetti and her friends were calm.

Ranger Defendants Christopher Bellino ("Bellino") and David Sanchez ("Sanchez") rounded up Mazzetti and her friends around a picnic table, questioned the group about the conduct being investigated, told the group that they were not free to leave and threatened to use handcuffs. Within minutes, a male member of the group admitted to being the driver of the vehicle.  Mazzetti advised the rangers that she had just walked up from the river, she had not been in the vehicle, and that she did not wish to participate in the investigation.  The rangers ordered her to sit down. Bellino then asked for identification, but when Mazzetti got up to go get her identification, she was grabbed by Bellino and Sanchez.[4]  Bellino threatened to handcuff Mazzetti, pulled a Taser, and threatened to use the Taser against her.

Other park rangers began to arrive on the scene, including Ranger Smith and Defendant Ranger Brendan Bonner ("Bonner").  The rangers spread out around the campsite to keep Mazzetti and her friends from leaving.  The rangers physically and verbally threatened Mazzetti to keep her from leaving the picnic area.  The rangers had no reasonable suspicion that Mazzetti had engaged in any criminal conduct, and the behavior that the rangers were investigating had ceased and was no longer a threat to anyone.

An audio-video recording of the incident made by a Park Ranger shows that Bellino

---

[3] The facts are taken from the FAC and are assumed to be true, as is required when resolving a Rule 12(b)(6) motion to dismiss.  See Faulkner v. ADT Sec. Servs., 706 F.3d 1017, 1019 (9th Cir. 2013).

[4] The FAC makes clear that Mazzetti is not entirely sure which rangers performed which acts.  She indicates that a ranger was believed to have done a particular act.  For purposes of this order, the Court will simply state that a particular ranger did a particular act.

2

conferenced with Bonner sometime after Bellino had threatened Mazzetti with a Taser. It can be heard that Bellino described Mazzetti as "uncooperative," and when asked if he was going to arrest her, Bellino responded that he was going to do something but that he did not yet know what. Bonner asked if Mazzetti had since been cooperative, and Bellino said that she had been "cooperative since." Bellino and Bonner then agreed to arrest Mazzetti and take her to jail.

The rangers reapproached Mazzetti and her friends, segregated Mazzetti, and walked her over near a ranger's vehicle. Bellino, Bonner, and Ranger Hastings physically restrained and handcuffed Mazzetti. Mazzetti verbally protested being handcuffed and asked "why are you arresting me?", but she did not physically resist. Mazzetti was wearing shorts, a bathing suit top, and a loose fitting t-shirt that had its sleeves cut off. Hastings was sent back to watch the other members of Mazzetti's group at the campsite. Bellino then asked Bonner if there was a female ranger on duty, and Bonner responded that one would be on duty shortly. Bellino and Bonner then moved Mazzetti again. According to the video, these rangers moved Mazzetti in order to "do a search behind the vehicle."

Mazzetti was walked to the other side of the ranger's vehicle so that she was out of view from her friends. Bellino and Bonner then began to taunt and touch Mazzetti. They began poking in her hair with a pen-like object, and running their hands through her hair. Bellino then told Mazzetti, "I have to search your breasts." Mazzetti told them not to search her breasts and complained that the rangers were hurting her. Mazzetti was placed in a stress-hold, and Bellino and Bonner then groped Mazzetti's breasts. Mazzetti screamed for assistance and to make the rangers stop, and also kept screaming "stop hurting me." Bellino told Mazzetti that he was going to search her groin area. Mazzetti was then taken to the ground. The video shows Bellino and Bonner grabbing Mazzetti's bare knees and prying her legs apart so that they could touch her groin. Mazzetti screamed in protest and pain. Bellino and Bonner removed Mazzetti's shoes, and then locked Mazzetti in the back of the ranger vehicle. Mazzetti screamed to be released. Bellino and Bonner had singled out Mazzetti, "attacked and humiliated her, groped on her breasts, groped on her groin, and sexually assaulted and battered [Mazzetti] . . . because of her gender." FAC ¶ 56.

1    While Mazzetti was screaming for help, Sanchez, Hastings, and Smith kept Mazzetti's

2    friends away from her.  Mazzetti's friends pleaded with the three rangers to help Mazzetti.  The

3    three rangers witnessed what was happening to Mazzetti, but did nothing reasonable to prevent the

4    violation of Mazzetti's rights.  The rangers also sent away potential witnesses.

5    Mazzetti was taken to jail, where she was forced to stay the night.  Mazzetti was released

6    the next day.

7    Bellino, Bonner, and Sanchez drafted false and misleading reports, failed to provide

8    exculpatory information, and failed to identify witnesses who could support Mazzetti's version of

9    events, even though the rangers had such information.  Bellino recommended charging Mazzetti

10   with violations of 36 C.F.R. 2.32(a)(1) (interference), 36 CFR 2.32(a)(2) (failing to obey a lawful

11   order), 36 CFR 2.34(a)(2) (disorderly conduct), and 36 CFR 2.34(a)(3) (unreasonable noise).

12   Based upon the rangers' reports, Mazzetti was charged with and prosecuted for violations of the

13   above Class B misdemeanors.

14   A bench trial was conducted before Magistrate Judge Seng.  Magistrate Judge Seng ruled

15   that the rangers had no reasonable suspicion to stop Mazzetti and that Mazzetti was unlawfully

16   arrested, that Mazzetti's Fourth Amendment rights had been violated, that there was no grounds

17   for threatening Mazzetti with force, and that Mazzetti had engaged in constitutionally protected

18   speech.  Magistrate Judge Seng acquitted Mazzetti of all charges except for a violation of 36 CFR

19   2.34(a)(3), based on Mazzetti's continued screaming after she had been placed in the rangers'

20   vehicle.  However, on appeal, the U.S. Attorney dismissed the 2.34(a)(3) charge against Mazzetti.

21

22   **I.      DENDANTS' SUMMARY JUDGMENT MOTION**

23   A significant portion of Defendants' summary judgment motion is moot because

24   defendants Michael Hastings and Aaron Smith have been dismissed from this case with prejudice.

25   For the portions of the summary judgment motion that are not moot, Mazzetti asks that the Court

26   deny the motion under Rule 56(d) because no discovery has occurred.  In reply, Defendants state

27   that they do not oppose granting Mazzetti's Rule 56(d) request as to the Fourth Amendment

28   claims, but argue that summary judgment should be granted on other claims.

1    In pertinent part, Rule 56(d) provides that if a "nonmovant shows by affidavit or

2  declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the

3  court may:  (1) defer considering the motion [for summary judgment] or deny it . . . ."  Fed. R.

4  Civ. Pro. 56(d).  This Rule provides a mechanism "for litigants to avoid summary judgment when

5  they have not had sufficient time to develop affirmative evidence."  Burlington Northern & Santa

6  Fe R.R. Co. v. The Assiniboine and Sioux Tribes of the Fort Peck Indian Reservation, Montana,

7  323 F.3d 767, 773-774 (9th Cir. 2003).  Generally, in order to obtain relief under Rule 56(f), a

8  party must show: "(1) that they have set forth in affidavit form the specific facts that they hope to

9  elicit from further discovery, (2) that the facts sought exist, and (3) that these sought-after facts are

10  'essential' to resist the summary judgment motion."  State of California v. Campbell, 138 F.3d

11  772, 779 (9th Cir. 1998).  However, when a summary judgment motion is filed "so early in the

12  litigation, before a party has had any realistic opportunity to pursue discovery relating to its theory

13  of the case, district courts should grant any [Rule 56(d)] motion fairly freely."  Burlington

14  Northern, 323 F.3d at 773-74.

15    Here, this case is in its infancy.  There is no scheduling order, no discovery has occurred,

16  no answers have been filed, no Rule 26 disclosures have been made, and no depositions of any

17  party have occurred.  There is no opposition to granting Mazzetti's Rule 56(d) request as to the

18  Fourth Amendment claims.  Given the partial agreement by Defendants and the early procedural

19  posture of this case, the Court finds that summary judgment motion is premature.  Accordingly,

20  Defendants' motion for summary judgment is denied without prejudice.  See Fed. R. Civ. Pro.

21  56(d); Burlington No., 323 F.3d at 773-74.  Once a scheduling order is entered, and adequate

22  discovery has occurred, Defendants may file a new summary judgment motion at that time.

23    However, Defendants have made arguments that rely in part on the FAC's factual

24  allegations being inadequate, and in part on facts submitted in support of the summary judgment

25  motion.  Mazzetti has responded to some of these arguments.  After considering the parties'

26  positions, to the extent that Defendants' motion identifies shortcomings in the FAC, the Court will

27  address Mazzetti's *Brady* claim and her First Amendment claims as part of the resolution of

28  Defendants' motion to dismiss.

1 **II.      RULE 12(b)(6) MOTION TO DISMISS**

2          *12(b)(6) Framework*

3          Under Federal Rule of Civil Procedure 12(b)(6), a claim may be dismissed because of the

4 plaintiff's "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A

5 dismissal under Rule 12(b)(6) may be based on the lack of a cognizable legal theory or on the

6 absence of sufficient facts alleged under a cognizable legal theory. Conservation Force v. Salazar,

7 646 F.3d 1240, 1242 (9th Cir. 2011); Johnson v. Riverside Healthcare Sys., 534 F.3d 1116, 1121

8 (9th Cir. 2008). In reviewing a complaint under Rule 12(b)(6), all allegations of material fact are

9 taken as true and construed in the light most favorable to the non-moving party. Faulkner v. ADT

10 Sec. Servs., 706 F.3d 1017, 1019 (9th Cir. 2013); Johnson, 534 F.3d at 1121. However,

11 complaints that offer no more than "labels and conclusions" or "a formulaic recitation of the

12 elements of action will not do." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Dichter-Mad Family

13 Partners. LLP v. United States, 709 F.3d 749, 761 (9th Cir. 2013). The Court is not required "to

14 accept as true allegations that are merely conclusory, unwarranted deductions of fact, or

15 unreasonable inferences." Wilson v. Hewlett-Packard Co., 668 F.3d 1136, 1145 n. 4 (9th Cir.

16 2012); Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001). To avoid a Rule

17 12(b)(6) dismissal, "a complaint must contain sufficient factual matter, accepted as true, to state a

18 claim to relief that is plausible on its face." Iqbal, 556 U.S. at 678; see Bell Atl. Corp. v.

19 Twombly, 550 U.S. 544, 555, 570 (2007). "A claim has facial plausibility when the plaintiff

20 pleads factual content that allows the court draw the reasonable inference that the defendant is

21 liable for the misconduct alleged." Iqbal, 556 U.S. at 678; Dichter-Mad, 709 F.3d at 761.

22 "Plausibility" means "more than a sheer possibility," but less than a probability, and facts that are

23 "merely consistent" with liability fall short of "plausibility." Iqbal, 556 U.S. at 678; Li v. Kerry,

24 710 F.3d 995, 999 (9th Cir. 2013). The Ninth Circuit has distilled the following principles from

25 *Iqbal* and *Twombly*: (1) to be entitled to the presumption of truth, allegations in a complaint or

26 counterclaim may not simply recite the elements of a cause of action, but must contain sufficient

27 allegations of underlying facts to give fair notice and to enable the opposing party to defend itself

28 effectively; (2) the factual allegations that are taken as true must plausibly suggest an entitlement

1    to relief, such that it is not unfair to require the opposing party to be subjected to the expense of

2    discovery and continued litigation.  Starr v. Baca, 652 F.3d 1202, 1216 (9th Cir. 2011).  In

3    assessing a motion to dismiss, courts may consider documents attached to the complaint,

4    documents incorporated by reference in the complaint, or matters of judicial notice.  Dichter-Mad,

5    709 F.3d at 762. If a motion to dismiss is granted, "[the] district court should grant leave to amend

6    even if no request to amend the pleading was made . . . ."  Henry A. v. Willden, 678 F.3d 991,

7    1005 (9th Cir. 2012).  Leave to amend need not be granted if amendment would be futile or if the

8    plaintiff has failed to cure deficiencies despite repeated opportunities.  Mueller v. Aulker, 700 F.3d

9    1180, 1191 (9th Cir. 2012); Telesaurus VPC, LLC v. Power, 623 F.3d 998, 1003 (9th Cir. 2010).

10    **1.        Third Cause of Action – Fifth Amendment Equal Protection & *Brady* Claim**

11        *Defendant's Argument*

12        Defendants argue that the third cause of action does not adequately allege a violation of

13    equal protection.  There are no allegations that Defendants acted with the intent or purpose to

14    discriminate against Mazzetti because of her membership in a protected class or that similarly

15    situated individuals were not searched incident to arrest.  Instead, the FAC contains a single

16    conclusory allegation that the rangers' conduct was because of Mazzetti's gender.  Such an

17    allegation is insufficient and not entitled to a presumption of truth.

18        Defendants also argue that Mazzetti's *Brady* claim fails as a matter of law.  There was no

19    prejudice to Mazzetti because she was acquitted of three counts (resisting and interfering, violating

20    an order, and using language to incite).  The one count for which Mazzetti was convicted

21    (unreasonable noise) was dismissed on appeal, and the alleged *Brady* material was not relevant to

22    that count.

23        *Plaintiff's Opposition*

24        Mazzetti argues that the FAC properly alleges an equal protection violation.  Defendants

25    fail to acknowledge the factual allegations that are included in the FAC.  The FAC alleges and

26    supports the conclusion that Mazzetti was singled out for a special behind the vehicle search, that

27    her breast and groin area were groped, and that the rangers acted with the purpose to discriminate

28    against her because she is a woman.

1    Mazzetti also argues that Defendants' reliance on the fact that she was acquitted of all but

2    one of the charges misses the point.  The FAC alleges that the rangers subjected her to an

3    improper prosecution based upon false statements in their reports and their failure to disclose

4    exculpatory statements and witness information to the prosecutor.  For example, Mazzetti argues

5    that she should be able to prove that the failure of the rangers to disclose that they knew Greg

6    Bernal was driving the car and that Mazzetti was not in the car encouraged the prosecutor to

7    charge her with violating lawful orders.  There are questions whether the rangers intentionally

8    manipulated the legal process to cover-up their own wrong doing.

9        *Legal Standards*

10       a.    Equal Protection

11       Equal protection "is essentially a direction that all persons similarly situated should be

12   treated alike."  City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985).  Equal

13   protection principles apply to the federal government through the Due Process Clause of the Fifth

14   Amendment.  Bolling v. Sharpe, 347 U.S. 497, 499 (1954); Hamad v. Holder,  732 F.3d 990, 1004

15   n.11 (9th Cir. 2014).  A plaintiff may file a 42 U.S.C. § 1983 *Bivens* claim in order to seek

16   damages for a violation of the Fifth Amendment's equal protection guarantee.  See Davis v.

17   Passman, 442 U.S. 228, 248-49 (1979).  Generally, the approach to a Fifth Amendment equal

18   protection claim is precisely the same as the approach taken with an equal protection claim under

19   the Fourteenth Amendment.  See Adarand Constructors v. Pena, 550 U.S. 200, 217 (1995);

20   Artichoke Joe's Cal. Grand Casino v. Norton, 353 F.3d 712, 714 n.2 (9th Cir. 2003).  "To prevail

21   on an equal protection claim . . . a plaintiff must demonstrate that enforcement had a

22   discriminatory effect and the police were motivated by a discriminatory purpose."  Lacey v.

23   Maricopa Cnty., 693 F.3d 896, 920 (9th Cir. 2012).  "Enforcement may be shown through a

24   variety of actual or threatened arrests, searches and temporary seizures, citations, and other

25   coercive conduct by the police."  Id.  To allege discriminatory purpose, the plaintiff "must allege

26   facts plausibly showing that the defendants acted with an intent or purpose to discriminate against

27   [her] based on membership in a protected class."  Hartmann v. California Dept. of Corr. & Rehab.,

28   707 F.3d 1114, 1124 (9th Cir. 2013); see also Barren v. Harrington, 152 F.3d 1193, 1194 (9th Cir.

1    1998).  An intent or purpose to discriminate means that "a defendant acted at least in part because

2    of a plaintiff's protected status."  Serrano v. Francis, 345 F.3d 1071, 1082 (9th Cir. 2003).  To

3    allege discriminatory effect, the plaintiff must allege facts plausibly showing that similarly

4    situated individuals were not subject to the enforcement conduct.  See Lacey, 693 F.3d at 920

5    (discussing discriminatory effect in the summary judgment context).

6         b.    *Brady* Claims

7         "*Brady*'s requirement to disclose material exculpatory and impeachment evidence to the

8    defense applies equally to prosecutors and police officers."  Gantt v. City of Los Angeles, 717

9    F.3d 702, 709 (9th Cir. 2013); Tennison v. City & County of San Francisco, 570 F.3d 1078, 1087

10   (9th Cir. 2009).  "To state a claim under Brady, the plaintiff must allege that (1) the withheld

11   evidence was favorable either because it was exculpatory or could be used to impeach, (2) the

12   evidence was suppressed by the government, and (3) the nondisclosure prejudiced the plaintiff."

13   Gantt, 717 F.3d at 709; Smith v. Almada, 640 F.3d 931, 939 (9th Cir. 2011).  Further, when a

14   plaintiff brings a § 1983 claim against a law enforcement officer for a *Brady* violation, the plaintiff

15   "must show that the police officers acted with deliberate indifference to or reckless disregard for

16   an accused's rights or for the truth in withholding evidence from prosecutors."  Tennison, 570

17   F.3d at 1088.  No *Brady* violation occurs when the accused actually possess the information that

18   was allegedly withheld.  Rhoades v. Henry, 598 F.3d 495, 502 (9th Cir. 2010).  With respect to the

19   second element, "suppression occurs when the government fails to turn over even evidence that is

20   known only to police investigators and not to the prosecutor."  Youngblood v. West Virginia, 547

21   U.S. 867, 869-70 (2006); Gantt, 717 F.3d at 709.  However, if the accused "is aware of the

22   essential facts enabling him to take advantage of any exculpatory evidence, the government's

23   failure to bring the evidence to the direct attention of the defense does not constitute

24   'suppression.'"  Cunningham v. Wong, 704 F.3d 1143, 1154 (9th Cir. 2013).  Therefore, the

25   pertinent question in assessing suppression is whether the accused "has enough information to be

26   able to ascertain the supposed *Brady* material on his own."  Milke v. Ryan, 711 F.3d 998, 1017

27   (9th Cir. 2013).  Nevertheless, simply because *Brady* information may be in the possession of a

28   defense witness does not necessarily mean that the *Brady* information is available to the defense.

1    See Tennison, 570 F.3d at 1091.  With respect to the third element, when the defendant has a

2    reasonable opportunity to present impeaching or exculpatory evidence to the jury and does so,

3    there is no material prejudice.  See United States v. Woodley, 9 F.3d 774, 777 (9th Cir. 1993);

4    United States v. Aichele, 941 F.2d 761, 764 (9th Cir. 1991); see also Tennison, 570 F.3d at 1093.

5    Further, "strictly speaking, there is never a real '*Brady* violation' unless the nondisclosure was so

6    serious that there is a reasonable probability that the suppressed evidence would have produced a

7    different verdict."  Smith, 640 F.3d at 939 (citing Strickler v. Greene, 527 U.S. 263, 281 (1999)).

8              *Discussion*

9              a.        Equal Protection Component Of The Fifth Amendment

10            The FAC expressly alleges that Mazzetti is a female and that the park rangers singled her

11   out and groped her because of her gender.  See FAC ¶ 56.  There is no dispute that gender is a

12   protected class.  See Bray v. Alexandria Women's Health Clinic, 506 U.S. 263, 322 (1991); Oona

13   R.S. by Kate S. v. McCaffrey, 143 F.3d 473, 476 (9th Cir. 1998); Simontacchi v. Nevada, 2009

14   U.S. Dist. LEXIS 24000, *11 (D. Nev. Mar. 25, 2009); G.C. v. N. Clackamas Sch. Dist., 654

15   F.Supp.2d 1226, 1251 (D. Or. 2008).  The factual allegations about Mazzetti's garb, the rangers'

16   separation of Mazzetti, and in particular the rangers' physical contact with Mazzetti plausibly

17   indicate that the rangers acted against Mazzetti intentionally and at least in part because of her

18   gender.  See Hartmann, 707 F.3d at 1124; Serrano, 345 F.3d at 1082.

19            The FAC also expressly identifies enforcement conduct.  The rangers' seizure, search, and

20   arrest of Mazzetti are all enforcement activities.  See Lacey, 693 F.3d at 920.

21            However, the FAC does not make any allegations about other individuals who were

22   similarly situated but treated differently.  Without allegations regarding similarly situated

23   individuals, Mazzetti has not alleged a plausible equal protection claim.  See id.

24            Defendants argue that Mazzetti's equal protection claim should be dismissed without leave

25   to amend because Mazzetti is unable to make allegations regarding similarly situated individuals.

26   This is the first motion to dismiss.  The Court has not given Mazzetti prior opportunities to

27   properly plead this cause of action, and contrary to Defendants' arguments, it is not clear that

28

1    amendment would be futile.  Therefore, dismissal will be with leave to amend.[5]  See Mueller, 700

2    F.3d at 1191; Telesaurus, 623 F.3d at 1003.

3                    b.      *Brady v. Maryland*

4           In addition to the facts described above, the FAC also alleges under the third cause of

5    action that the Defendants "made misleading statements in reports and failed to collect or include

6    exculpatory information, including but not limited to the identities of the witnesses who were at

7    the scene and had complained about the [Defendants'] actions."  FAC ¶ 57.  The FAC also alleges

8    that the Defendants caused Mazzetti to incur attorney fees "defending the criminal charges . . . ."

9    Id. at ¶ 63.  Mazzetti has failed to adequately allege a *Brady* violation.

10          First, although the FAC alleges that the rangers withheld information from their reports,

11   there is no allegation that the evidence was actually suppressed.  Information that is initially

12   withheld may still be disclosed at a later time, and if the information is eventually disclosed at a

13   reasonable time, there is no suppression or prejudice.  See Rhoades, 598 F.3d at 502; Woodley, 9

14   F.3d at 777; Aichele, 941 F.2d at 764.  Further, the FAC alleges that Mazzetti was with friends at

15   the campsite.  The FAC indicates that it was the individuals at the campsite who witnessed the

16   entire interaction with Mazzetti and the rangers.  Given the allegation that Mazzetti was at the park

17   with "friends," it is extremely likely that Mazzetti had enough information to determine the

18   identity of the individuals at the campsite.  If Mazzetti had such information, then there was no

19   suppression.  See Milke, 711 F.3d at 1017; Cunningham, 704 F.3d at 1154.

20          Second, the FAC does not plausibly allege prejudice.  Mazzetti was acquitted of all but one

21   of the charges, and the remaining charge was dismissed by the United States Attorney on appeal.

22   The suppressed evidence appears to relate exclusively to the charges for which Magistrate Judge

23   Seng acquitted Mazzetti.  Thus, the criminal proceedings terminated entirely in Mazzetti's favor,

24   and no finding of guilt was made regarding the charges for which the evidence at issue was

25

26   [5] The Court notes that Mazzetti's equal protection claim appears to be novel.  Claims of sexual misconduct by law
     enforcement officers against " a criminal suspect during a continuing seizure is analyzed under the Fourth
27   Amendment."  Fontana v. Haskin, 262 F.3d 871, 882 (9th Cir. 2001); see Skeels v. Pilegaard, 2013 U.S. Dist. LEXIS
     34302, *8-*9 (N.D. Cal. Mar. 12, 2013); Yocum v. Kootenai Cnty., 2011 U.S. Dist. LEXIS 72741, *21-*22 (D. Ida.
28   July 6, 2011).  However, the parties have not addressed the issue, and at this time the Court merely notes that the type
     of conduct at issue is generally litigated under the Fourth Amendment.

1    relevant.  Under these circumstances, there does not appear to be a "real *Brady* violation."  <u>Smith</u>,

2    640 F.3d at 939.  Moreover, there was a video of this incident.  The FAC describes certain parts of

3    the video, including some audio portions.  Importantly, the video was a joint exhibit at the bench

4    trial, and Magistrate Judge Seng viewed the video.  <u>See</u> Doc. No. 25 at pp. 2-3 in *United States v.*

5    *Mazzetti*, 6:11-mj-0090 MJS.[6]  Unlike a witness, a video is not subject to cross examination or the

6    danger of bias and lies.  Given the decision of Magistrate Judge Seng to acquit Mazzetti of all

7    conduct that related to the interactions with the rangers prior to being placed in the vehicle, the

8    video had the same effect as would the allegedly withheld information.  No prejudice is evident.

9           Mazzetti's opposition and the FAC indicate that she is attempting to recover damages,

10   including legal expenses, that were suffered as a result of the criminal proceedings against her.

11   However, these damages are not themselves a basis for asserting a *Brady* claim.  As discussed

12   above, there are particular elements that must be alleged, and Mazzetti does not address the impact

13   of the video or the *Smith* decision on the FAC's *Brady* claim.  The FAC simply does not plausibly

14   allege two of three elements of a *Brady* claim.  <u>See</u> <u>Smith</u>, 640 F.3d at 939.  Further, the damages

15   that Mazzetti raises in opposition may be obtained through other theories.  For example, the Ninth

16   Circuit recognizes that if a plaintiff can demonstrate that a prosecutor's judgment was not truly

17   independent, then damages for an unlawful arrest may continue beyond the time that the

18   prosecutor decided to file charges.[7]  <u>See</u> <u>Harper v. City of Los Angeles</u>, 533 F.3d 1010, 1027 (9th

19   Cir. 2008); <u>Smiddy v. Varney</u>, 665 F.2d 261, 267 (9th Cir. 1981).  Indeed, the FAC requests

20   damages arising out of the criminal litigation as part of the first cause of action for an unlawful

21   seizure/arrest.  <u>See</u> FAC ¶ 40.

22          The deficiencies in Mazzetti's *Brady* claim are substantial.  Mazzetti's opposition does not

23   indicate that she can sufficiently allege the necessary elements of suppression and prejudice.

24   Dismissal of the *Brady* claim without leave to amend is appropriate.  <u>Mueller</u>, 700 F.3d at 1191.

25

26   [6] The Court takes judicial notice of proceedings and filings in Mazzetti's criminal case.  <u>See</u> Fed. R. Evid. 201;
     <u>Trigueros v. Adams</u>, 658 F.3d 983, 987 (9th Cir. 2011); <u>United States v. Wilson</u>, 631 F.2d 118, 119 (9th Cir. 1980).

27

28   [7] Also, a person may bring a malicious prosecution claim under 42 U.S.C. § 1983.  <u>See</u> <u>Smith</u>, 640 F.3d at 938;
     <u>Johnson v. Knorr</u>, 477 F.3d 75, 82-85 (3d Cir. 2007).  However, it does not appear that the FAC alleges a malicious
     prosecution cause of action.  If Mazzetti wishes to allege such a claim, she may do so in an amended complaint.

1        **2.       Fourth Cause of Action -- First Amendment Retaliation**

2        *Defendants' Argument*

3            Defendants argue that Mazzetti's First Amendment retaliation claims fail as a matter of

4    law.  First, the FAC indicates that the rangers' initial stop of Mazzetti was retaliatory, but then the

5    FAC alleges that Mazzetti's statements were made after the initial stop.  Thus, Mazzetti's

6    statements could not have been the "but for" cause of the initial stop.  Second, the FAC does not

7    allege that Sanchez had a retaliatory motive based on Mazzetti's speech.  Third, the FAC indicates

8    that Bonner was not present when Mazzetti made her pre-arrest statements and complaints, and

9    there are no allegations that Bonner had a retaliatory motive.   The FAC does not demonstrate but

10   for causation as to either Bonner or Sanchez.

11       *Plaintiff's Opposition*

12           Mazzetti argues that Defendants' focus on the initial seizure is unavailing.  Although

13   Mazzetti agrees that she said nothing to Bellino and Sanchez before they walked into the campsite

14   and seized her and her friends at the picnic table, Mazzetti protested the seizure and made

15   statements to Bellino and Sanchez before she tried to walk away and before they threatened her,

16   grabbed her, and assaulted her.  Mazzetti argues that she was seized at the picnic table, and her

17   treatment became increasingly severe the more she protested.  Sanchez also heard her make a

18   comment about the rangers being "rental cops," and Sanchez kept others from witnessing her

19   being unlawfully searched and sexually humiliated.  Mazzetti states that she is uncertain what

20   Bonner heard prior to his arrival, but Bonner did hear what she was saying as she was handcuffed,

21   put in a stress-hold, moved behind the vehicle, and groped.  The rangers' conduct is such that it

22   could have been motivated at least in part by Mazzetti's complaints and statements.

23       *Legal Standard*

24           "[T]he First Amendment protects a significant amount of verbal criticism and challenge

25   directed at police officers."  City of Houston v. Hill, 482 U.S. 451, 461 (1987).   Unless it is

26   shown that speech is likely to produce a clear and present danger of a serious substantive evil that

27   rises far above public inconvenience, annoyance, or unrest, then a person's verbal challenges to

28   police are protected against punishment and censorship by the police.  See id.  "Official reprisal

1  for protected speech offends the Constitution . . . ."  Lacey v. Maricopa Cnty., 693 F.3d 896, 916

2  (9th Cir. 2012).  In order to establish a claim of retaliation in violation of the First Amendment, a

3  plaintiff must demonstrate:  (1) that the official's conduct would chill a person of ordinary

4  firmness from future First Amendment activity, and (2) that the official's desire to chill the speech

5  was a "but-for" cause of the official's unlawful conduct.  Ford v. City of Yakima, 706 F.3d 1188,

6  1193 (9th Cir. 2013).  Thus, a plaintiff "must allege facts ultimately enabling him to prove the

7  elements of retaliatory animus as the cause of injury, with causation being understood to be but-

8  for causation."  Lacey, 693 F.3d at 917.  A plaintiff need not show that her speech was actually

9  inhibited or suppressed, rather it is sufficient that the official's conduct would chill or silence the

10  speech of a person of ordinary firmness.  Id.

11      *Discussion*

12      1.      Initial Detention

13      The Court understands the "initial detention" to be when Bellino and Sanchez initially

14  seized/detained Mazzetti and her friends at the picnic table.  See FAC ¶ 18; Doc. No. 30 at 24:21.

15      With this understanding, the FAC does not allege that Mazzetti had said anything prior to

16  the initial detention by the rangers at the picnic table.  See FAC ¶ 18.  In fact, in her opposition,

17  Mazzetti acknowledges that she said nothing to Bellino and Sanchez before they walked into the

18  campsite.  See Doc. No. 30 at 24:9-11.  If Mazzetti had not engaged in any speech before the

19  rangers arrived and seized her and her friends at the picnic table, then it is not possible that

20  Mazzetti's speech was the "but for" cause of the initial seizure.  Without actual speech by

21  Mazzetti, there is no way for the rangers to have formed a retaliatory animus.  A First Amendment

22  retaliation claim based on the "initial detention" by Bellino and Sanchez fails as a matter of law.

23  See Ford, 706 F.3d at 1193; Lacey, 693 F.3d at 917.  To the extent that Mazzetti alleges such a

24  claim, it will be dismissed without leave to amend.

25      2.      Ranger Sanchez

26      The fourth cause of action is somewhat ambiguous in that it lumps all defendants together

27  by simply referring to "the Park Ranger Defendants."  See ¶¶ 65-72.  In relevant part, the FAC

28  alleges that Mazzetti was "singled out, stopped, detained, arrested, and/or attacked based upon her

14

1   statements she made to the Park Rangers, and each of them, about the way she was being treated."

2   Id. at ¶ 67.

3          There are problems with this allegation as applied to Sanchez.  The FAC does not

4   adequately identify any conduct by Sanchez that is reasonably linked to any statements made by

5   Mazzetti.  The FAC indicates that Sanchez initially detained Mazzetti and grabbed her as she was

6   going to obtain identification.  See FAC ¶¶ 18, 19.  As discussed above, Mazzetti's initial

7   detention at the picnic table was made prior to her engaging in any speech, and thus, could not

8   have been retaliatory.  As for the grab, the FAC indicates that Mazzetti had previously stated that

9   she was not part of the driving incident and that she did not want to participate (no other

10  statements by Mazzetti are alleged).  See id. at ¶ 18.  The rangers ordered her to sit down.  See id.

11  Mazzetti was later grabbed as she got up after being asked for identification.  See id. at ¶ 19.  The

12  reasonable inference from the FAC is that Mazzetti was grabbed because she got up after having

13  been told to sit down.  The FAC neither expressly alleges nor plausibly indicates that Sanchez

14  grabbed Mazzetti out of retaliatory animus for her statement about not wanting to participate.

15         Additionally, the FAC does not describe how Sanchez grabbed Mazzetti.  Without more of

16  a description, the FAC does not plausibly indicate that Sanchez's grab was the type of conduct that

17  would chill a person of ordinary firmness.  See Lacey, 693 F.3d at 917.

18         For these reasons, the FAC does not allege a plausible First Amendment retaliation claim

19  against Sanchez.  See Ford, 706 F.3d at 1193; Lacey, 693 F.3d at 917.  Because it is not clear that

20  amendment would be futile, dismissal of this claim will be with leave to amend.

21         3.      Ranger Bonner

22         The FAC alleges that Bellino informed Bonner that Mazzetti had been uncooperative, and

23  Bonner asked if she had been "cooperative since."  See FAC ¶ 21.  As Bonner and Bellino began

24  to segregate Mazzetti, she kept asking why she was being arrested.  See FAC ¶ 22.  Bonner and

25  Bellino taunted Mazzetti and ran their hands through her hair.  See id. at ¶ 24.  When the rangers

26  informed Mazzetti that they were going to search her breasts, she told them not to do so and

27  complained that they were hurting her.  Bonner and Bellino then put Mazzetti in a stress-hold and

28  groped her.  See id.  Mazzetti screamed for help and for the rangers to stop hurting her.  See id.

1    Bellino and Bonner then took plaintiff to the ground in order to do a search of Mazzetti's groin,

2    and Mazzetti screamed in protest and pain.  See id.   Finally, the FAC alleges that the rangers'

3    "attack" on Mazzetti was "based on" Mazzetti's complaints about the way she was being treated.

4    See id. at ¶ 67.

5           The Court is satisfied that the FAC plausibly alleges a First Amendment retaliation claim.

6    First, an arrest, utilizing a pain-hold/stress-hold, and groping intimate bodily areas are acts that

7    could certainly chill a person of ordinary firmness from engaging in speech.  Second, the FAC

8    alleges that the arrest of, and "attack"/physical conduct of Bellino and Bonner on, Mazzetti was

9    "based on" Mazzetti's complaints.  "In common talk, the phrase 'based on' indicates a but-for

10   causal relationship."  Safeco Ins. Co. Am. v. Burr, 551 U.S. 47, 63 (2007); see also University of

11   Tex. S.W. Med. Ctr. v. Nassar, 133 S. Ct. 2517, 2527 (2013).  The FAC describes actions by

12   Bellino and Bonner that are in extremely close proximity to Mazzetti's speech, and the FAC

13   clearly indicates that Bonner heard much of Mazzetti's speech, which was in the nature of a

14   challenge to the rangers' actions.  Cf. Cohen v. Fred Meyer, Inc., 686 F.2d 793, 796 (9th Cir.

15   1982) (holding that there was no causal link in a retaliation case where defendant was unaware

16   that plaintiff had filed a complaint with the EEOC).

17          There may be other inferences that could be made from the FAC's allegations.  However,

18   in the context of a Rule 12(b)(6) motion, the allegations are construed in the light most favorable

19   to the non-moving party.  Faulkner, 706 F.3d at 1019.  Because the FAC alleges conduct by

20   Bonner that would chill a person of ordinary firmness, and that conduct was done "based on"

21   Mazzetti's complaints, the FAC alleges a plausible First Amendment retaliation claim against

22   Bonner.  See Ford, 706 F.3d at 1193; Lacey, 693 F.3d at 917.

23

24                                            **ORDER**

25          Accordingly, IT IS HEREBY ORDERED that:

26   1.     Defendant's motion for summary judgment is DENIED pursuant to Rule 56(d);[8]

27   _____

28   [8] Defendants' may file a subsequent summary judgment motion after a scheduling order is in place and after adequate
     time for discovery has occurred.

2.    Defendant's motion to dismiss the *Brady* claim under the third cause of action is GRANTED and that claim is DISMISSED without leave to amend;

3.    Defendants motion to dismiss the equal protection claim under the third cause of action is GRANTED with leave to amend;

4.    Defendants' motion to dismiss the First Amendment retaliation claim against Defendant Bonner is DENIED;

5.    Defendants' motion to dismiss the First Amendment retaliation claim against Defendant Sanchez is GRANTED and that claim is DISMISSED with leave to amend;

6.    Defendants' motion to dismiss any First Amendment retaliation claims based on Defendants Bellino and Sanchez's initial detention of Mazzetti at the picnic table is GRANTED and that claim is DISMISSED without leave to amend;

7.    Plaintiff may file an amended complaint that is consistent with this order within twenty-one (21) days of service of this order; and

8.    If Plaintiff does not file a timely amended complaint, then Defendants shall file an answer within twenty-eight (28) days of service of this order.

IT IS SO ORDERED.

Dated:   August 21, 2014                                        

                                SENIOR  DISTRICT  JUDGE