UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| MICHELLE A. MAZZETTI, | CASE NO. 1:13-CV-01123-AWI-GSA |
|---|---|
| Plaintiff | |
| v. | ORDER ON DEFENDANTS' MOTION TO DISMISS THE SECOND AMENDED COMPLAINT |
| CHRIS BELLINO, et al., | |
| Defendants | (Doc. No. 45) |

This is a 42 U.S.C. § 1983 *Bivens* action brought by Plaintiff Michelle Mazzetti ("Mazzetti") against three park rangers employed at Yosemite National Park (collectively "the Rangers"). The operative complaint is the Second Amended Complaint ("SAC"). Mazzetti alleges various constitutional violations, including a Fourth Amendment malicious prosecution claim. Defendants move to dismiss the malicious prosecution claim under Rule 12(b)(6). For the reasons that follow, Defendants' motion will be denied.

**FACTUAL BACKGROUND[1]**

From the SAC, on July 26, 2011, Mazzetti was in a Yosemite National Park campground with friends. The Rangers approached Mazzetti's campground to address complaints that someone had been driving a vehicle too quickly through the campground and acting

---

[1] The facts are taken from the FAC and are assumed to be true, as is required when resolving a Rule 12(b)(6) motion to dismiss. See Faulkner v. ADT Sec. Servs., 706 F.3d 1017, 1019 (9th Cir. 2013).

disrespectfully.  The Rangers had information that those who had been driving too quickly and acting disrespectfully were all males.  Mazzetti is a female.  When the rangers approached the campsite, there was no indication of criminal behavior or disorderly conduct, and Mazzetti and her friends were calm.

Ranger Defendants Christopher Bellino ("Bellino") and David Sanchez ("Sanchez") rounded up Mazzetti and her friends around a picnic table, questioned the group about the conduct being investigated, told the group that they were not free to leave and threatened to use handcuffs.  Within minutes, a male member of the group admitted to being the driver of the vehicle.  Mazzetti advised the rangers that she had just walked up from the river, she had not been in the vehicle, and that she did not wish to participate in the investigation.  The rangers ordered her to sit down.  Bellino then asked for identification, but when Mazzetti got up to go get her identification, she was grabbed by Bellino and Sanchez.  Bellino threatened to handcuff Mazzetti, pulled a taser, and threatened to use the taser against her.  The Rangers physically and verbally threatened Mazzetti to keep her from leaving the picnic area.  The Rangers had no reasonable suspicion that Mazzetti had engaged in any criminal conduct, and the behavior that the rangers were investigating had ceased and was no longer a threat to anyone.

An audio-video recording of the incident made by a Ranger shows that Bellino conferenced with Bonner sometime after Bellino had threatened Mazzetti with a taser.  It can be heard that Bellino described Mazzetti as "uncooperative," and when asked if he was going to arrest her, Bellino responded that he was going to do something but that he did not yet know what.  Bonner asked if Mazzetti had since been cooperative, and Bellino said that she had been "cooperative since."  Bellino and Bonner then agreed to arrest Mazzetti and take her to jail.

The Rangers reapproached Mazzetti and her friends, segregated Mazzetti, and walked her over near a Ranger's vehicle.  Bellino, Bonner, and Ranger Hastings physically restrained and handcuffed Mazzetti.  Mazzetti verbally protested being handcuffed and asked "why are you arresting me?", but she did not physically resist.  Mazzetti was wearing shorts, a bathing suit top, and a loose fitting t-shirt that had its sleeves cut off.  Hastings was sent back to watch the other members of Mazzetti's group at the campsite.  Bellino then asked Bonner if there was a female

1   ranger on duty, and Bonner responded that one would be on duty shortly.  Bellino and Bonner then
2   moved Mazzetti again.  According to the video, these Rangers moved Mazzetti in order to "do a
3   search behind the vehicle."

4   Mazzetti was walked to the other side of the Ranger's vehicle so that she was out of view
5   from her friends.  Bellino and Bonner then began to taunt and touch Mazzetti.  They began poking
6   in her hair with a pen-like object, and running their hands through her hair.  Bellino then told
7   Mazzetti, "I have to search your breasts."  Mazzetti told them not to search her breasts and
8   complained that the rangers were hurting her.  Mazzetti was placed in a stress-hold, and Bellino
9   and Bonner then groped Mazzetti's breasts.  Mazzetti screamed for assistance and to make the
10  Rangers stop; she also kept screaming "stop hurting me."  Bellino told Mazzetti that he was going
11  to search her groin area.  Mazzetti was then taken to the ground.  The video shows Bellino and
12  Bonner grabbing Mazzetti's bare knees and prying her legs apart so that they could touch her
13  groin.  Mazzetti screamed in protest and pain.  Bellino and Bonner removed Mazzetti's shoes, and
14  then locked Mazzetti in the back of the vehicle.  Mazzetti screamed to be released.

15  Rangers Bellino, Bonner, and Sanchez drafted false and misleading reports, failed to
16  provide exculpatory information, and failed to identify witnesses who could support Mazzetti's
17  version of events, even though the rangers had such information.  Bellino recommended charging
18  Mazzetti with violations of 36 C.F.R. 2.32(a)(1) (interference), 36 CFR 2.32(a)(2) (failing to obey
19  a lawful order), 36 CFR 2.34(a)(2) (disorderly conduct), and 36 CFR 2.34(a)(3) (unreasonable
20  noise).  Based upon the rangers' reports, Mazzetti was charged with and prosecuted for violations
21  of the above Class B misdemeanors.

22  A bench trial was conducted before Magistrate Judge Seng.  Magistrate Judge Seng ruled
23  that the Rangers had no reasonable suspicion to stop Mazzetti and that Mazzetti was unlawfully
24  arrested, that Mazzetti's Fourth Amendment rights had been violated, that there was no grounds
25  for threatening Mazzetti with force, and that Mazzetti had engaged in constitutionally protected
26  speech.  Magistrate Judge Seng acquitted Mazzetti of all charges except for a violation of 36 CFR
27  2.34(a)(3), based on Mazzetti's continued screaming after she had been placed in the Rangers'
28  vehicle.  However, on appeal, the U.S. Attorney dismissed the 2.34(a)(3) charge against Mazzetti.

**RULE 12(b)(6) FRAMEWORK**

Under Federal Rule of Civil Procedure 12(b)(6), a claim may be dismissed because of the plaintiff's "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A dismissal under Rule 12(b)(6) may be based on the lack of a cognizable legal theory or on the absence of sufficient facts alleged under a cognizable legal theory. Conservation Force v. Salazar, 646 F.3d 1240, 1242 (9th Cir. 2011); Johnson v. Riverside Healthcare Sys., 534 F.3d 1116, 1121 (9th Cir. 2008). In reviewing a complaint under Rule 12(b)(6), all allegations of material fact are taken as true and construed in the light most favorable to the non-moving party. Faulkner v. ADT Sec. Servs., 706 F.3d 1017, 1019 (9th Cir. 2013); Johnson, 534 F.3d at 1121. However, complaints that offer no more than "labels and conclusions" or "a formulaic recitation of the elements of action will not do." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Dichter-Mad Family Partners. LLP v. United States, 709 F.3d 749, 761 (9th Cir. 2013). The Court is not required "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." Wilson v. Hewlett-Packard Co., 668 F.3d 1136, 1145 n. 4 (9th Cir. 2012); Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001). To avoid a Rule 12(b)(6) dismissal, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Iqbal, 556 U.S. at 678; see Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678; Dichter-Mad, 709 F.3d at 761. "Plausibility" means "more than a sheer possibility," but less than a probability, and facts that are "merely consistent" with liability fall short of "plausibility." Iqbal, 556 U.S. at 678; Li v. Kerry, 710 F.3d 995, 999 (9th Cir. 2013). The Ninth Circuit has distilled the following principles from *Iqbal* and *Twombly*: (1) to be entitled to the presumption of truth, allegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively; (2) the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of

4

discovery and continued litigation. <u>Starr v. Baca</u>, 652 F.3d 1202, 1216 (9th Cir. 2011). In assessing a motion to dismiss, courts may consider documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice. <u>Dichter-Mad</u>, 709 F.3d at 762. If a motion to dismiss is granted, "[the] district court should grant leave to amend even if no request to amend the pleading was made . . . ." <u>Henry A. v. Willden</u>, 678 F.3d 991, 1005 (9th Cir. 2012). Leave to amend need not be granted if amendment would be futile or if the plaintiff has failed to cure deficiencies despite repeated opportunities. <u>Mueller v. Aulker</u>, 700 F.3d 1180, 1191 (9th Cir. 2012); <u>Telesaurus VPC, LLC v. Power</u>, 623 F.3d 998, 1003 (9th Cir. 2010).

## **DEFENDANTS' MOTION**

*Defendants' Argument*

The Rangers argue that the malicious prosecution claim should be dismissed with prejudice because it is Mazzetti's previously dismissed *Brady* claim. Mazzetti's malicious prosecution claim faults the Rangers for not including a verbatim transcript of statements or a description of certain actions, even those these statements and actions were recorded in videos. Mazzetti alleges that certain information was omitted or exaggerated or misrepresented, even though the information was disclosed in multiple videos. These videos were admitted in Mazzetti's criminal trial as joint exhibits, and Mazzetti cannot allege that any information was actually withheld from her or from the prosecutor. Moreover, the Rangers' reports expressly disclosed the videos as evidence and incorporated the videos by reference in their reports. The presumption of prosecutorial independence generally precludes liability for malicious prosecution claims for individuals who participate in an investigation or file a report. There are no allegations that would overcome the presumption of prosecutorial independence.

*Plaintiff's Opposition*

Mazzetti argues that dismissal is improper. The SAC sets forth detailed factual allegations that support the conclusion that Rangers Bellino, Bronner, and Sanchez maliciously prosecuted her. The allegations show an arrest without probable cause, the Rangers wrote reports that omitted crucial facts, made false statements, and grossly embellished what occurred. Mazzetti was

prosecuted based on these reports, and the Rangers' actions were to cover up their own misdeeds and punish her for challenging their illegal acts. Mazzetti argues that even though there may be overlapping facts, the malicious prosecution claim and the *Brady* claim are premised on different constitutional violations.

*Relevant Allegations*

In pertinent part, the SAC alleges:

[The Rangers] did not include in their reports that Greg Bernal promptly confessed that he was the driver of the car. They also did not include in their reports that [Mazzetti] and others had confirmed that [Mazzetti] had not been in the car and could not have been involved in the alleged crime they were investigating. [Ranger] Bellino's report misleadingly claimed that the entire group he detained had been in the vehicles and shouting profanities, when the only complaints were about males. There were no complaints about females.

[Rangers] Bellino and Sanchez did not include in their reports that [Mazzetti] had gotten up out of her chair in response to Ranger Bellino's statement that "I need your identification." They instead wrote their reports to be misleading about [Mazzetti's] actions. [Ranger] Bellino's report falsely described the initial contact with [Mazzetti] and the other people in her campsite as "uncooperative, argumentative, and hostile," despite that everyone in the campsite went to the picnic area as instructed and no one was "hostile" or in any way threatening. The Defendants' reports claimed that the group became progressively more "uncooperative, more argumentative, and more hostile," despite that the video shows the group was sitting at the picnic table, answering questions, and Mazzetti was peacefully questioning her unlawful detention/arrest. Despite his statements on video that [Mazzetti's] actions were not "worth" arresting her over, Ranger Bellino's report falsely claimed that he, "elected to await the arrival of additional units before I handcuffed Mazzetti."

[Rangers] Bonner's and Bellino's reports omitted that after Bonner suggested arresting [Mazzetti] for interference or something like that, Bellino responded, "Um, I'm a go with something . . . I don't know what yet. I think . . . I don't know if its worth, uh, arresting her over it." Ranger Bonner's report left out that Bellino had told him that [Mazzetti] had been cooperative since being threatened with the Taser and that nothing had occurred between the time Bellino admitted doubt about having probable cause to arrest [Mazzetti] and the time that he and Bellino removed her from the group to be handcuffed. [Ranger] Bonner's report also made unsupported allegations about the rest of [Mazzetti's] party becoming increasingly hostile," and he claimed that [Mazzetti] kicked at him and Bellino before she was told they were going to search her breasts – factual statements that re directly contradicted by the video evidence.

SAC ¶¶ 27-29.

*Legal Standard*

"Malicious prosecution consists of initiating or procuring the arrest and prosecution of another under lawful process, but from malicious motives and without probable cause . . . . The

6

test is whether the defendant was actively instrumental in causing the prosecution." <u>Sullivan v. County of Los Angeles</u>, 12 Cal.3d 710, 720 (1974). Under 42 U.S.C. § 1983, a criminal defendant may maintain a malicious prosecution claim against *inter alia* police officers who wrongfully caused her prosecution. <u>Smith v. Almada</u>, 640 F.3d 931, 938 (9th Cir. 2011); <u>Awabdy v. City of Adelanto</u>, 368 F.3d 1062, 1066 (9th Cir. 2004). To maintain a § 1983 action for malicious prosecution, a "plaintiff must show that the defendants prosecuted her with malice and without probable cause, and that they did so for the purpose of denying her a specific constitutional right." <u>Smith</u>, 640 F.3d at 938; <u>Awabdy</u>, 368 F.3d at 1066. Further, because the state tort common law has been incorporated into the elements of a § 1983 malicious prosecution claim, a plaintiff must generally show that the prior prosecution terminated in a manner that indicates innocence, i.e. a favorable termination. <u>Awabdy</u>, 368 F.3d at 1066-68.

Probable cause is an absolute defense to a malicious prosecution claim. <u>Smith</u>, 640 F.3d at 938; <u>Lassiter v. City of Bremerton</u>, 556 F.3d 1049, 1054-55 (9th Cir. 2009). In a malicious prosecution action involving more than one charged offense, courts must separately analyze each of the charges claimed to have been maliciously prosecuted. See <u>Johnson v. Knorr</u>, 477 F.3d 75, 84-85 (3d Cir. 2007); <u>Posr v. Doherty</u>, 944 F.2d 91, 100 (2d Cir. 1991). That probable cause existed, or a conviction may have resulted, as to some charges does not preclude a plaintiff from pursuing a claim based on those charges to which no probable cause existed and to which there was a favorable termination. See <u>Holmes v. Village of Hoffman Estates</u>, 511 F.3d 673, 682 (7th Cir. 2007); <u>Uboh v. Reno</u>, 141 F.3d 1000, 1005 (11th Cir. 1998); <u>Crowley v. Katleman</u>, 8 Cal.4th 666, 677-78 (1994); <u>Silas v. Arden</u>, 213 Cal.App.4th 75, 89 (2012). Stated differently, simply because probable cause exists or a conviction results for at least one charge does not necessarily preclude a malicious prosecution claim based on other charges. See <u>Holmes</u>, 511 F.3d at 682-83; <u>Posr</u>, 944 F.2d at 100; <u>Crowley</u>, 8 Cal.4th at 677-78. Further, generally "the decision to file a criminal complaint is presumed to result from an independent determination on the part of the prosecutor, and thus, precludes liability for those who participated in the investigation or filed a report that resulted in the initiation of proceedings." <u>Awabdy</u>, 368 F.3d at 1067; see also <u>Smiddy v. Varney</u>, 665 F.2d 261, 266-68 (9th Cir. 1981). "However, the presumption of prosecutorial

independence does not bar a subsequent § 1983 claim against state or local officials who improperly exerted pressure on the prosecutor, knowingly provided misinformation to him, concealed exculpatory evidence, or otherwise engaged in wrongful or bad faith conduct that was actively instrumental in causing the initiation of legal proceedings." Awabdy, 368 F.3d at 1067.

*Discussion*[2]

Initially, the Rangers contend that Mazzetti is continuing to assert a *Brady* claim. However, both parties acknowledge that the Court has previously dismissed the *Brady* claim without leave to amend, and Mazzetti has stated expressly that the *Brady* theory is no longer a part of this case. See Doc. No. 46 at 1:8-10. It is true that Mazzetti's *Brady* claim and malicious prosecution claim rest on a number of the same facts. But, this does not mean that Mazzetti is improperly re-alleging a *Brady* claim. The malicious prosecution and *Brady* claims involve different constitutional rights and, critically, different elements of recovery. See Smith, 640 F.3d at 938-40; cf. Gantt v. City of Los Angeles, 717 F.3d 702, 709 (9th Cir. 2013) with Awabdy, 368 F.3d at 1066-68. Because different elements and standards are at issue, that the facts alleged were insufficient to meet the particular elements of a *Brady* claim does not necessarily speak to their sufficiency to meet the particular elements of a malicious prosecution claim.[3] The Court does not find that Mazzetti is improperly re-alleging her dismissed *Brady* claim.

With respect to the merits of Mazzetti's malicious prosecution claim, the Rangers do not challenge the SAC's allegations concerning the absence of probable cause, a termination of proceedings in Mazzetti's favor, or the motivation behind the Rangers' actions. Thus, the Rangers do not actually challenge the elements of a malicious prosecution claim. See Smith, 640 F.3d at 938; Awabdy, 368 F.3d at 1066, 1068. Instead, the Rangers focus on whether prosecutorial discretion shields them from liability.

---

[2] The Rangers have submitted copies of their reports, and in connection with their prior motions, had submitted a copy of Bellino's video recording of the incident. Both the reports and the video are referenced in the SAC. Mazzetti has made no objections to the submitted video or the Rangers' reports. The Court will consider the video and the reports to be incorporated by reference into the SAC. See Dichter-Mad, 709 F.3d at 762; Knievel v. ESPN, 393 F.3d 1068, 1076 (9th Cir. 2005).

[3] Indeed, the *Brady* claim was dismissed without leave to amend because the allegations showed that Mazzetti could not adequately allege the elements of suppression and prejudice. See Doc. No. 42. Neither of these elements are part of a malicious prosecution claim. See Smith, 640 F.3d at 938; Awabdy, 368 F.3d at 1066-68.

The Rangers are correct that their reports do reference Bellino's video of the incident. See Doc. No. 45-2 at Ex. A. Further, one witness statement that appears to have been part of the reports indicates that males were driving fast and being verbally abusive, but that a car with all females was following and the occupants of that yelled for other cars to speed up. See id. (Statement of Schmidt). The Rangers are also correct that some of the information identified by the SAC as being absent from the report is clearly within the video. For example, it can be heard that a male admits to having driven a vehicle, the video shows Mazzetti getting up after being asked for identification and explaining that she got up because Bellino asked for identification, Bellino's statement to Bonner that Mazzetti had been cooperative since he pulled his taser can be heard, and Bellino's conversation with Bonner about whether to charge Mazzetti can be heard. Finally, the video shows that Mazzetti's group was argumentative, and shows Mazzetti being handcuffed, led away, and searched.

Despite the reference to the video in the Rangers' reports, and the content of the video itself, the Court cannot find that dismissal is appropriate at this time. There is a rebuttable presumption of prosecutorial independence. See Awabdy, 368 F.3d at 1067. The presumption may be rebutted in several ways, including omissions of key facts, improper pressure/influence by an officer, and misleading reports. See id. Here, the events surrounding the prosecutor's decision to bring charges are entirely unknown. There is no indication of when the prosecutor saw the video, what contact the Rangers had with the prosecutor, what influence or role they had with respect to the prosecutor's decision, what the prosecutor reviewed in deciding to pursue charges, which portions of the reports (if any) the prosecutor relied upon, or why the prosecutor decided to press charges at all. Cf. Blankenhorn v. City of Orange, 485 F.3d 463, 483-84 (9th Cir. 2007) (finding summary judgment improper where evidence demonstrated that prosecutor had not viewed a videotape prior to filing charges and other evidence demonstrated that the officers' reports were false and misleading); Awabdy, 368 F.3d at 1067 (describing ways in which presumption of prosecutorial independence may be rebutted). Further, there are aspects of the video that are not necessarily clear. Faces are not always seen on the video, and the video is not always clear about what is being said by members of Mazzetti's group. At various points the

members of the group are talking at once, and communication between Bellino and the group was not always easy.  Also, it is not necessarily clear that Mazzetti kicked at Bonner and Bellino prior to Bellino telling Mazzetti that they were going to search her breasts.  Finally, the video does not explain that the driver who was speeding and using abusive language was male or that the individual riding on the back tire was a male.  That is, the video does not make clear that the criminal conduct being investigated had been committed by males.  Thus, there are aspects of the video that do not necessarily address or clear up every contested point.[4]

In sum, Mazzetti has alleged a valid § 1983 malicious prosecution cause of action.  The Rangers are attempting to obtain a dismissal based on what amounts to a defense.  The defense is rebuttable, however, and there has not been adequate discovery surrounding the prosecutor's decision to prosecute.  Without the benefit of discovery on this issue, the Court will not dismiss the malicious prosecution claim at this time.

**ORDER**

Accordingly, IT IS HEREBY ORDERED that:

1. Defendants' Rule 12(b)(6) motion to dismiss is DENIED;
2. Defendants shall file an answer within fourteen (14) days of service of this order; and
3. This matter is referred to the Magistrate Judge for the purposes of conducting a scheduling conference and entering a scheduling order.

IT IS SO ORDERED.

Dated:   November 5, 2014                          _____
                                                    SENIOR DISTRICT JUDGE

---

[4] The Court is not making a finding about the materiality of each point raised by Mazzetti.  The Court is simply pointing out that the video does not necessarily answer every point of contention.